## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RICHARD TREMALIO** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | **3:12-CV-00357 (VLB)** |
| **v.** | : | |
| | : | |
| **DEMAND SHOES, LLC** | : | |
| | : | |
| **Defendant.** | : | **September 30, 2013** |

### MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 39]

### INTRODUCTION

Before the Court is a motion for summary judgment filed by the Defendant, Demand Shoes, LLC ("Demand Shoes").  The Plaintiff, Richard Tremalio, brought this suit alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and age and gender discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, *et seq.*, arising from Demand Shoes's severance of Plaintiff's relationship with Demand Shoes.  For the reasons stated hereafter, Defendant's motion for summary judgment is DENIED as to all claims.

### I. FACTUAL BACKGROUND[1]

The following facts are undisputed unless otherwise noted.  Demand Shoes retained Tremalio as a Sales Representative for approximately 29 months, from

---

[1] **The facts in this opinion are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties, including deposition transcripts.**

June 2008 to November 2010. [Dkt. 41, Def. 56(a)(1) Statement, ¶ 5.] Plaintiff has been employed in the shoe industry his entire life, and worked as a sales representative from 1981 until 2008. *Id.* at ¶ 17. Plaintiff worked for several other shoe companies as a sales representative before joining the Defendant on June 2, 2008, when he was 63 years of age. *Id.* at ¶¶ 18, 27. Plaintiff interviewed with John Cicione, National Sales Manager for Demand Shoes, Diane Butrus, Managing Member and Chief Operating Officer of Demand Shoes, Joseph Butrus, and Fritz Dijkmans before he was offered employment with Demand Shoes. *Id.* at ¶¶ 2, 3, 4, 27. After Plaintiff entered into employment with Demand Shoes, he discussed the specifics of his position and negotiated his sales commission with Diane Butrus. *Id.* at ¶ 29. As a Sales Representative for Demand Shoes, Plaintiff's job was to sell shoes by making sales calls to customers in New York and the surrounding area, and to handle major customer issues that arose in his territory. *Id.* at ¶ 31, 32. Plaintiff's relationship with Demand Shoes was terminated on November 1, 2010 via a phone call from John Cicione. Further facts relating to Plaintiff's relationship with Demand shoes are presented below.

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be

drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03-cv-00481, 2004 U.S. Dist. LEXIS 22112, at *4 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

## III. DISCUSSION

## A. Legal Standard for ADEA Discrimination Claims

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2013). The ADEA's prohibition against discrimination based on age protects employees who are at least forty years of age. 29 U.S.C. § 631(a).

In the Second Circuit ADEA claims are analyzed using the burden-shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as slightly modified by the Supreme Court's subsequent decision in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010).[2] Under this framework, the plaintiff bears "the initial burden of establishing a prima facie case of discrimination." *Id.* at 106 (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff's burden for establishing a *prima facie* case is *de minimis*. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's prima facie burden as minimal and de minimis.") (quotation omitted). "If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action." *Gorzynski*, 596 F.3d at 106 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant then articulates a legitimate, nondiscriminatory reason for its action, the plaintiff "can no longer

---

[2] Although the Supreme Court noted in *Gross* that it had "not definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context," 557 U.S. at 175 n.2, the Second Circuit concluded post-*Gross* that the *McDonnell Douglas* framework still applies to ADEA claims, *see Gorzynski*, 596 F.3d at 106.

rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Id.* (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)).  Finally, under the Supreme Court's decision in *Gross*, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor."  *Id.* (quoting *Gross*, 557 U.S. at 180)).

Finally, the Second Circuit has cautioned that "trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996).  Additionally, "where an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gorzynski*, 596 F.3d at 101 (quoting *Holcomb*, 521 F.3d at 137).

## 1. Prima Facie Case

In order to establish a prima facie case of age discrimination, Tremalio must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107 (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).  The burden of establishing a prima facie case is "not a heavy one." *Id.*

Defendant concedes that Plaintiff was within the age group protected by the ADEA and that he experienced adverse employment action. Defendant disputes that Plaintiff was qualified for the job, asserting that "he was not meeting Demand Shoes' expectations as a sales representative" and that "Plaintiff had a very negative, combative, and disrespectful attitude, was deficient at handling customer service issues, and failed to respond to communications in a timely manner." [Dkt. 40 at 18-19.] Defendant's arguments as to the qualification prong are the same arguments the Defendant raises as its reason for having severed Plaintiff's employment, and are not sufficient to prevent Plaintiff's establishment of a *prima facie* case. As the Second Circuit has held, "the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91-92 (2d Cir. 2001) (quoting *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)). "As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Id.* at 92 (citing *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001)). Here, Defendant does not dispute that Plaintiff was hired by Defendant after having been interviewed by at least three people affiliated with Defendant, and Defendant concedes that Plaintiff had extensive experience in the shoe industry, including as a shoe salesman. [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 17-20, 27-28.] The Court finds that Plaintiff

has presented sufficient evidence to meet the qualification prong of his *prima facie* case.

In regards to the final prong of the *prima facie* case, typically "an employer's decision to replace an older worker with a significantly younger one can support an inference of intentional age discrimination even when both persons are ADEA class members." *Woodman*, 411 F.3d at 78-79 (citing *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312-13 (1996)).  However, the Second Circuit has instructed that "an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a *prima facie* inference of discriminatory intent." *Woodman*, 411 F.3d at 90.  As the Second Circuit noted in *Woodman*, "In cases where such knowledge is undisputed, which we expect to be most ADEA cases, a court need not specifically address this point; rather it may be assumed in considering whether the circumstances presented indicate intentional discrimination." *Woodman*, 411 F.3d at 90 Additionally, "in the majority of age discrimination cases, a defendant employer's knowledge of a plaintiff's age will be undisputed because employers routinely maintain employee age information in their personnel files or are generally aware of employees' relative ages from personal on-the-job contact. . . . Such circumstances easily support an inference of employer knowledge, certainly at the prima facie stage, where plaintiff's burden is minimal." *Woodman*, 411 F.3d at 80 (citation omitted); *cf. Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (finding in a Title VII gender discrimination case that "the mere

7

fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage").

Plaintiff has presented sufficient evidence to draw the inference that Defendant had knowledge of the relative ages of Plaintiff and his replacement at the time Plaintiff was terminated and his replacement was hired.  Defendant has not asserted that it had no knowledge of the relative ages at the time Plaintiff was severed and his replacement was hired.  Defendant asserts only that "there is no admissible evidence that the circumstances surrounding the adverse action give rise to an inference of age or gender discrimination." [Dkt. 40 at 19.]  Nor does Defendant deny Plaintiff's assertion that Plaintiff was replaced by a 29-year-old woman.  Although the record does not contain the exact age of Plaintiff's replacement, Plaintiff testified at his deposition that he knew his replacement,[3] and further testified that he knew his replacement to be approximately 29 years old at the time of his deposition.[4]   Defendant merely asserts that "there is no admissible evidence in the record of the age of Plaintiff's replacement," [Dkt. 50

---

[3] "Q: You testified that you were replaced by a younger individual?  A:  Yes.  Q: How do you know who replaced you?  A:  I know her. Q: Okay.  Who were you replaced by?  A: Her name is Ivy Reyes." [Dkt. 46, Ex. 22, Pl. Depo. Tr. at 184:13-19].

[4] "Q: Is Ivy Reyes 20 years younger than you?  A:  She's probably - - let's see, right now – I guess she's probably pushing 29."  [Dkt. 46, Ex. 22, Pl. Depo. Tr. at 184:20-25].  "Q: You testified earlier that you thought Ivy Ryes was 29 years old?  A: I believe so.  Q: How do you know that?  A: I don't know.  Q:  Did she personally tell you that?  A:  No, she didn't personally --  Q: Have you ever personally met her?  A: Of course.  Q: Okay.  How do you know she's 29?  A. Because, you know, you hear – you get into conversations with people, and this is – you know.  Q: So it wasn't anything that she personally told you?  A:  It could have been.  Q: You don't know?  A:  But I know – She's young.  Q: Is it something that Mr. Cicione told you?  A: No.  She has a young child."  [Dkt. 50, Ex. H, Pl. Depo. Tr. at 197:2-21].

at 9], and that Plaintiff has presented "no evidence that Demand Shoes knew that [Plaintiff] was replaced by a 'substantially younger' employee."  Defendant cites no authority for this assertion; on a motion for summary judgment the Court may only consider admissible evidence and without knowing the source of the Plaintiff's reputed knowledge of the age of his replacement, it is impossible to state with certainty that the Plaintiff's statement is not inadmissible hearsay. However, Plaintiff testified that John Cicione, National Sales Manager for Demand Shoes, told him that Demand Shoes wanted to replace him with a younger woman.  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 88:4-12, 95:4-5.]  Additionally, Plaintiff testified that when he was terminated, Mr. Cicione told him that he should have known that Demand Shoes wanted to replace him with a younger employee.  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 65:2-4.]  He testified that he met his replacement, and that he knew that she had a young child.  [Dkt. 50, Ex. H, Pl. Depo. Tr. at 197:2-21]  He could have deduced from the totality of the facts known to him that he was indeed replaced by a younger woman of approximately 29 years of age.  Notably, the Defendant does not deny that he was replaced by a younger woman, instead relying on the supposition that there is no admissible evidence to support this conclusion.  With all of these facts taken together the Court finds Plaintiff's statement that he was replaced by a younger woman admissible under the residual exception to the hearsay rule because of its circumstantial indicia of trustworthiness, for the limited purpose of determining whether there is a genuine issue of material fact on this prong.  See Fed. R. Evid 807.

"In these circumstances, the Court may infer that the employer was aware of the discrepancy between [Plaintiff's] and [his replacement's] ages." *Getler v. Cornell Weill Univ. Med. College Dep't*, No. 05-Civ.-8550, 2006 U.S. Dist. LEXIS 100745, at *23 (S.D.N.Y. Dec. 6, 2006) *adopted by* No. 05 Civ 8550, 2007 U.S. Dist. LEXIS 380 (S.D.N.Y. Jan. 3, 2007), *aff'd*, 315 Fed. Appx. 355 (2d Cir. 2009); *see also Toomer v. Dep't of Educ. Of N.Y.*, 09-Civ-9034, 2013 U.S. Dist. LEXIS 44952, at *27-29 (S.D.N.Y. Mar. 28, 2013) (finding that plaintiff had established a *prima facie* case of age discrimination in hiring where plaintiff asserted that her replacement was "young" without specifying the age range of the replacement and where the court found that defendant likely knew plaintiff's age).  Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that Plaintiff has presented sufficient evidence to create an inference that Defendant had knowledge of the relative ages and genders of Plaintiff and his replacement. Even if Defendant was not aware of the exact age of Plaintiff's replacement at the time she was hired, it is very difficult to believe that the relative age and gender differences between Plaintiff, a man in his mid-60s, and his replacement, a woman allegedly in her late 20s, were not obvious to Defendant. *Cf. Toomer*, 2013 U.S. Dist. LEXIS 44952, at *27-30.  The Court therefore finds that Plaintiff has established a *prima facie* case of age discrimination and sex discrimination.

## 2. Legitimate Nondiscriminatory Reason

Because the Plaintiff has established a *prima facie* case of discrimination, the burden shifts to the Defendant to provide a legitimate, nondiscriminatory reason for its action.   A defendant meets their burden to provide a legitimate,

10

nondiscriminatory reason for an adverse employment decision if the defendant presents a reason that "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Demand Shoes has articulated a legitimate, non-discriminatory reason for terminating Tremalio's employment by asserting that "Plaintiff had a very negative, combative, and disrespectful attitude, was deficient at handling customer service issues, and failed to respond to communications in a timely manner." [Dkt. 40 at 19.] The emails in the record show a pattern of discontent on the part of Defendant in regards to Plaintiff's performance. As an example, in a December 2009 email, Plaintiff was asked by Diane Butrus to increase his "motivation and creativity"; Diane Butrus also expressed that she was "not happy about [Plaintiff's] lack of enthusiasm and lack of results." [Dkt. 41, Ex. G, Pl.'s Responses to Def.'s First Set of Requests to Produce, at Ex. 2.]. In June 2010, Joseph Butrus emailed Plaintiff to express his displeasure with Plaintiff's responsiveness to emails, writing to Plaintiff on June 29, 2010: "This is a serious problem, Rich ,& [sic] I'm concerned that you indicate in your response to me that it's no big deal to you. Let me be clear this is important enough that if you continue to be non-responsive it could cost you your job with this company." [Dkt. 47, Ex. 8.] As another example, Diane Butrus sent Plaintiff an email on October 26, 2010, regarding his weekly sales update emails, and said: "Can you start off with something other than 'it has been a slow week'? It seems that every email you send starts off with a negative comment. Just leave that part out and

report on the status of your business.  What colors are the retailers looking for?  Is anyone placing reorders?  Did you open any new accounts and were they new stores?"  [Dkt. 47, Ex. 14.]  There is no evidence in the record as to whether Plaintiff responded to Diane Butrus.  What is in the record is that Plaintiff then forwarded the email from Diane Butrus to John Cicione, writing "[c]an you believe this".  [Dkt. 47, Ex. 14.]  "An employer's dissatisfaction with the quality of an employee's work is a legitimate non-discriminatory reason."  *Bogues v. Town of Trumbull*, 383 F. Supp. 2d 348, 356 (D. Conn. 2005) (citing *Slattery*, 248 F.3d at 92).  In addition, the dismissive tone and language of the Plaintiff's characterization of Diane Butrus' admonition is consistent with the reason given by the Defendant for Plaintiff's termination.   Accordingly, the Court finds that Defendant has met its burden to provide a legitimate nondiscriminatory reason for the termination of Plaintiff's employment.

### 3. Pretext

Because Demand Shoes has produced evidence that it acted for non-discriminatory reasons, Tremalio may no longer simply rely on having made out a prima facie case.  *Gorzynski*, 596 F.3d at 107 (citing *Holcomb*, 521 F.3d at 141).  The Court must therefore consider the evidence offered by Plaintiff and the counter-evidence offered by Defendant, and determine whether Plaintiff has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that Plaintiff's age was a "but for" cause of Defendant's decision to sever his employment.

Plaintiff testified at his deposition, and argues in his opposition to Defendant's motion for summary judgment, that that his supervisor,  John Cicione, told Plaintiff on multiple occasions in the year preceding his termination that Joseph Butrus had stated that he wanted Demand Shoes to have a younger, female sales force.  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 88:4-12, 95:4-5.][5]  Plaintiff testified that "[Cicione] told me that on at least three or four separate occasions." [Dkt. 41, Ex. A, Pl. Depo. Tr. at 65:7-8.]

Plaintiff also testified that when John Cicione called to terminate his relationship with Demand Shoes, Mr. Cicione said to him: "Well, [Cicione] said, they're letting you go.  And [Cicione] said, I told you it was coming, that they wanted - - [Cicione] said that Joe Butrus wants a young sales force."  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 65:2-4.]  In an affidavit attached to Defendant's motion for summary judgment, Cicione denies having mentioned age or gender in the phone call in which he informed Plaintiff of his termination.  [Dkt. 41, Ex. D at ¶ 22.] However, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (citations omitted).

Although the statements attributed to Joseph Butrus are central to the case, there is a genuine dispute of fact over Joseph Butrus's position with the

---

[5] "Q. So what did he say?  What did Mr. Cicione say to you?  A.  Exactly what you just said to me.  He wanted a young sales force, and he wanted females.  Q.  But you did not hear Mr. Butrus personally say this comment?  A. No, I did not.  Q. When did he tell you this alleged statement?  A. At least three or four different occasions."

Defendant.  Plaintiff asserts that Joseph Butrus was the President of Demand

Shoes, and cites in support of that allegation a submission that Defendant made

to the State of Connecticut Commission on Human Rights and Opportunities (the

"CHRO") in which Defendant states that Joseph Butrus is President of Demand

Shoes.  [Dkt. 47, Ex. 1A at ¶11(d).][6]  Defendant denies that Joseph Butrus is

president of Demand Shoes, and provides an affidavit from Diane Butrus stating

that "Joseph Butrus is not the President of Demand Shoes."  [Dkt. 50, Def. Reply

Br. at 8, Ex. I.]  Defendant does not volunteer Joseph Butrus's title or provide any

other information to explain his relationship to Demand Shoes or Diba Imports.[7]

Although the parties dispute Joseph Butrus's title, it is undisputed that he played

at least some role in managing personnel at Demand Shoes, including

interviewing Plaintiff before Plaintiff was hired, and providing at least some

supervision of Plaintiff's work.  [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 27, 34.]  The

Defendant asserts that the decision to sever Plaintiff's employment was made by

Diane Butrus, Joseph Butrus, and John Cicione.  [Dkt. 41, Def. 56(a)(1) Statement,

¶¶ 42-44.] Plaintiff denies paragraphs 42 and 43 of Defendants 56(a)(1) statement

---

[6] This document is titled "Respondent's Response to Agency's Request for
Information", and was apparently submitted by Defendant in response to a
request for information from the CHRO.  The Court will refer to this document as
the "CHRO RFI Response."

[7] Although it was not put in evidence or authenticated by either party, the Court
notes that the "About Us" page available on the website
www.demandshoes.com/eSource/ecom/eSource/default/default.aspx says that
"Mr. Joseph Butrus founded Diba Imports, LP, . . . in 1990."  About Us,
http://www.demandshoes.com/eSource/ecom/eSource/staticPages/AboutUs.html
(last visited Sept. 3, 2013).  Plaintiff cites to another portion of Defendant's
website, but Defendant objects to that citation, arguing that Plaintiff's cites to
evidence that is not authenticated and for which there is no foundation.  [Dkt. 50
at 7, 7 n.6.]  As such the Court does not rely on information from this website in
deciding this summary judgment motion.

in his Rule 56(a)(2) statement, [Dkt. 47], and appears to admit paragraph 44 only insofar as he admits that his employment was terminated.  However, Plaintiff offers no evidence to support his denials as required by Local Rule 56(a)(3), nor does he explain the apparently inconsistent statement Defendant gave to the CHRO regarding Joseph Butrus's position with Defendant.  D. Conn. L. Civ. R. 56(a)(3) (requiring that each statement of material fact in a Local Rule 56(a)(1) or Local Rule 56(a)(2) statement, as well as each denial in a summary judgment opponent's Local Rule 56(a)(2) statement, "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.").  Nor does he otherwise dispute that the decision to terminate his employment was made by Diane Butrus, Joseph Butrus, and John Cicione.  Plaintiff appears to assert in response that Diane Butrus alone made the decision to sever Plaintiff's employment, [Dkt.  46 at 43.], but Plaintiff cites nothing in support of that assertion. Viewing the facts in the light most favorable to Plaintiff, because Defendant admits that Joseph Butrus was involved in the decision to terminate the Plaintiff, and because the facts indicate that Joseph Butrus played at least some role in managing personnel at Demand Shoes, Plaintiff's testimony about statements attributed to Joseph Butrus weigh in favor of finding that Plaintiff has presented sufficient evidence upon which a reasonable jury could find by a preponderance of the evidence that his age was a "but for" cause of his termination.

<u>(a) Hearsay</u>

15

Defendant argues that Plaintiff's deposition testimony about statements attributed to Joseph Butrus, relayed to Plaintiff by John Cicione, is insufficient to defeat a motion for summary judgment because it is inadmissible hearsay.  The Defendant is correct that the Court may rely only on admissible evidence in deciding the motion for summary judgment.  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).  However, the Court finds that were Plaintiff to testify at trial in this matter, his testimony regarding the statements attributed to Joseph Butrus would likely be admissible under Federal Rule of Evidence 801(d)(2) as the statement of a party opponent.

"Federal Rule of Evidence 801(d)(2) specifically provides that a statement is not hearsay if it is offered against a party and is either '(A) the party's own statement, in either an individual or a representative capacity or  . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'" *Spiegel v. Schulmann*, 604 F.3d 72, 82 (2d Cir. 2010).

Although the parties dispute whether John Cicione was an independent contractor or an employee, it is undisputed that he was the National Sales Manager for Demand Shoes at the relevant time.  It is clear that John Cicione had at least some role in personnel matters, as it is undisputed that Plaintiff interviewed with Cicione before beginning work with Demand Shoes, and Cicione's duties as National Sales Manager included "track[ing] the progress and sales" of Demand Shoes's sales staff.  [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 12, 27.] It is also undisputed that it was John Cicione who called Plaintiff to convey the

16

news that the relationship with Demand Shoes had been terminated.  Drawing the inferences in favor of the Plaintiff for the purposes of summary judgment, the Court may infer that Cicione was acting as Demand Shoes's agent or servant, and that personnel decisions were within the scope of his agency or employment, when he relayed to Plaintiff the statements attributed to Joseph Butrus.  Viewing the facts in the light most favorable to Plaintiff, if Plaintiff were to testify at trial, Plaintiff's testimony regarding statements attributed to Joseph Butrus would likely be admissible under 801(d)(2).  *Cf. Spiegel*, 604 F.3d at 82; *Sedelnik v. City of Bridgeport*, 837 F. Supp. 2d 12, 17 (D. Conn. 2011) (finding admissible under Rule 801(d)(2) plaintiff's evidence of allegedly discriminatory statements made by senior personnel relayed to plaintiff by another employee).

### (b) Same Protected Class

The Court notes the "well-recognized inference against discrimination . . . where the person who participated in the allegedly adverse decision is also a member of the same protected class."  *Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (plaintiff in his mid-50s was terminated by a 61 year old supervisor).  "Although this does not end the inquiry, it provides an additional inference which plaintiff must overcome."  *Id.* (citing *Toliver v. Cmty. Action Commc'n to Help the Economy, Inc.*, 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985)); *see also Hasemann v. United Parcel Serv. of Am.*, No. 3:11-cv-554, 2013 U.S. Dist. LEXIS 25704, at *23-25 (D. Conn. Feb. 26, 2013)); *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993) (dismissing age discrimination claims and noting that the decision-makers for plaintiff's

17

termination were "[plaintiff's] age or older"); *Browne v. CNN Am. Inc.*, No. 98-Civ.-1769, 1999 U.S. Dist. LEXIS 17699, at *11-12 (S.D.N.Y. Nov. 16, 1999), *aff'd*, No. 99-9494, 2000 U.S. App. LEXIS 25480 (2d Cir. Oct. 6, 2000) (finding that "[t]he fact that [the ultimate decision maker] was a member of the protected class enhances the inference that age discrimination was not the motive behind the [decision-maker's] termination of plaintiff") (quotation and citations omitted); *Pisana v. Merrill Lynch & Co.*, No. 93-Civ.-4541, 1995 U.S. Dist. LEXIS 10296, at *14 (S.D.N.Y. July 24, 1995)(finding that "The fact that [the] decision makers were close to [plaintiff's] age, or older, weakens any suggestion of age discrimination.") (citing *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. at 225).

The fact that the evidence in the record indicates that the people who made the decision to sever Plaintiff's employment are all in the same protected class as Plaintiff makes discrimination "less plausible," but "not impossible." *Blasi v. N.Y. City Bd. Of Educ.*, Nos. 00-CV-5320, 03-CV-3836, 2012 U.S. Dist. LEXIS 113798, at *65 (E.D.N.Y. Mar. 12, 2012) (citations omitted).  As noted above, Defendant asserts that the decision to sever Plaintiff's employment was made by Diane Butrus, Joseph Butrus, and John Cicione, and Plaintiff appears to assert that the decision was made by Diane Butrus.  As of the date of the filing of Defendant's motion for summary judgment, Diane Butrus was 49 years old, Joseph Butrus was 72 years old, John Cicione was 62 years old, and Plaintiff was 68 years old. [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 2-5.][8]   Given that Plaintiff's employment was

_____

[8] **Plaintiff denies ¶ 4 of Defendant's Rule 56(a)(1) paragraph, [Dkt. 47], but does not dispute Defendant's assertion as to the age of John Cicione.  Therefore, the**

terminated on November 1, 2010, approximately 27 months before Defendant's motion for summary judgment was filed, it is clear that all of the decision makers were members of the protected class at the time of the adverse employment action.  Assuming for a moment that Plaintiff is correct and Diane Butrus was the sole decision-maker, the not insignificant age difference between the two (approximately 19 years) could decrease the inference that plaintiff must overcome.  *Cf. O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (holding that the fact that a plaintiff was replaced by a worker who is also a member of the class protected by the ADEA does not necessarily bar plaintiff from establishing a *prima facie* case under the ADEA).  Even assuming Defendant's version of the events is correct, the record does not indicate the extent to which each of the three decision-makers was involved, and the extent to which the decision was made by the significantly younger Diane Butrus.  Viewing the facts in the light most favorable to the Plaintiff, the Court declines to draw an inference against Plaintiff from this line of argument.

**(c) Same Actor**

"When the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."  *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).  "This is especially so when the firing has occurred only a short time after the hiring."  *Id.* (citations omitted) (affirming

---

Court will accept will accept as controlling Defendant's assertion regarding John Cicione's age as true in considering the motion for summary judgment.

**19**

district court's grant of summary judgment where plaintiff was hired, then fired 8 days later, by the same person).

As noted above, the parties do not agree on who made the decision to terminate Plaintiff.  Nor is it clearly undisputed exactly who made the decision to engage Plaintiff.  Defendant asserts that the decision to engage Plaintiff was made by the same three people Defendant alleges made the decision to terminate – Diane Butrus, Joseph Butrus, and John Cicione.  Plaintiff does not properly admit or deny this fact as required by Local Rule 56(a)(3).  *See* D. Conn. L. Civ. R. 56(a)(3).

"As 'several courts have found, the same-actor inference is permissive, not mandatory, and even if the same individuals made both decisions, the Court would not be compelled to give [the defendant] the benefit of the inference at [the summary-judgment] stage of the litigation.'"  *Collins v. Connecticut*, 684 F. Supp. 2d 232, 251 (D. Conn. 2010) (modifications in original) (quoting *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 351 (S.D.N.Y. 2009)).  "Moreover, 'the inference alone is generally not a sufficient basis to grant summary judgment for the employer, at least when the employee has proffered evidence of pretext.'"  *Id.* (quoting *Masters v. F.W. Webb Co.*, No. 03-cv-6280L, 2008 U.S. Dist. LEXIS 73585, at *20 (W.D.N.Y. Sept. 8, 2008)); *see also O'Diah v. Oasis*, No. 11 Civ. 309, 2013 U.S. Dist. LEXIS 102461, at *29 (S.D.N.Y. July 22, 2013) ("In any event, even if such an inference were warranted, it still would 'not be sufficient in itself to justify summary judgment because [plaintiff] has otherwise raised . . . genuine issues of

material fact.'") (quoting *Castagna v. Luceno*, No. 09 Civ. 9332, 2013 U.S. Dist. LEXIS 14932, at *13 n.8 (S.D.N.Y. Feb. 4, 2013)).

Because the identities of the people who made the decisions to terminate Plaintiff are not undisputed, and because Plaintiff has provided evidence sufficient to allow a reasonable jury to conclude by a preponderance of the evidence that Plaintiff's age was a "but for" cause of Defendant's decision to sever his employment, the Court is unpersuaded that the same actor inference should be applied so as to foreclose the Plaintiff from having a jury decide the disputed and ambiguous facts in this case. *Cf. O'Diah v. Oasis*, No. 11 Civ. 309, 2013 U.S. Dist. LEXIS 102461, at *29 (S.D.N.Y. July 22, 2013) (finding reliance on the same actor inference inappropriate where the owner of the defendant company had made "numerous alleged discriminatory comments" and finding the inference insufficient to justify summary judgment because plaintiff had "otherwise raised genuine issues of material fact.") (quoting *Castagna v. Luceno*, No. 09 Civ. 9332, 2013 U.S. Dist. LEXIS 14932, at *12 n.8 (S.D.N.Y. Feb. 4, 2013)).

Additionally, Plaintiff had major heart surgery after being hired by Defendant, and before being terminated, [Dkt. 46 at 40], a fact not disputed by Defendant, and thus "his personal circumstances at the time of his termination were significantly different from those that existed at the time of his hiring." *Masters v. F.W. Webb Co.*, No. 03-cv-6280L, 2008 U.S. Dist. LEXIS 73585, at *22 (W.D.N.Y. Sept. 8, 2008) (finding that plaintiff's bladder surgery that occurred after his hiring represented a significant change in his personal circumstances and finding that such changed circumstances could apply to both plaintiff's age

discrimination and disability discrimination claims) (citing *Feingold v. New York*, 366 F.3d 138, 154-55 (2d Cir. 2004); *Tellepsen Pipeline Services Co. v. N.L.R.B.*, 320 F.3d 554, 569 (5th Cir. 2003)); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 138 (2d Cir. 2000) (noting that the passage of time weakens the same actor inference because circumstances can change).  Even if it were undisputed that the same person(s) made the decisions to engage and terminate the Plaintiff, Plaintiff's heart surgery is a changed circumstance that weakens the same actor inference in this case, and the Court thus declines to draw this inference against the Plaintiff.

Because the Court declines to rely on the same actor inference in this case, the Court need not reach the question of whether the passage of 29 months between Plaintiff's engagement and Plaintiff's termination sharply decreases the weight of the same actor inference.[9]  Suffice it to say, were the Court to do so, Plaintiff's heart surgery would have to be weighed in evaluating the significance of the mere passage of time.

---

[9] The Second Circuit has "not delineated a set time period after which the same actor inference does not apply", *Jackson v. Post Univ., Inc.*, 836 F. Supp. 2d 65, 89 n.54 (D. Conn. 2011), although it has applied the same actor inference to a plaintiff that was "fired by the same man who had hired him three years earlier." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000).  Courts in the Southern District of New York have adopted a two year limit on the same actor inference. *See, e.g.*, *Thomas v. iStar Financial, Inc.*, 438 F. Supp. 2d 348, 361 (S.D.N.Y. 2006) (citations omitted) ("In the Second Circuit, the inference no longer applies when more than two years separate the hiring and firing."). However, courts in this District have not yet abandoned the three year period used by the Second Circuit in *Schnabel*.  *Cf. Jackson*, 836 F. Supp. 2d at 89 (reviewing precedent in the Second Circuit regarding the length of time between hire and discharge in considering the same actor inference); *see also Choate v. Transp. Logistics Corp.*, 234 F. Supp. 2d 125, 130-31 (D. Conn. 2002) (citing *Schnabel* and noting that the Second Circuit has applied the inference in cases where the hiring and firing are three years apart).

(d) Stray Remarks

Defendant asserts that even if there were discriminatory remarks made, they were "stray comments" and thus do not help Plaintiff meet his burden of proof, as ""the stray remarks of a decisionmaker, without more, cannot prove a claim of employment discrimination. . . ." *Weichman v. Chubb & Son*, 552 F. Supp. 2d 271, 284 (D. Conn. 2008) (*quoting Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001)).  However, "the court should not categorize a remark as 'stray' or 'not stray' and then disregard that remark if it falls under the 'stray' category."  *Weichman*, 552 F. Supp. 2d at 284 (citing *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115-16 (2d Cir. 2007)).  "Instead, the court must consider all the evidence in its proper context. . . . [T]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative the remark will be."  *Id.* (quoting *Tomassi*, 478 F.3d at 115)).

The Plaintiff does not allege mere "stray remarks" distant in time from the act of termination.  Plaintiff's allegations describe remarks that were made in the year before he was terminated, and a remark that was made at the time of his termination.  Further, these remarks were allegedly made by Joseph Butrus, whom Defendant asserts was involved in the decision to terminate Plaintiff. Finally, Plaintiff was allegedly replaced by a much younger female.  *Cf. Sedelnik v. City of Bridgeport*, 837 F. Supp. 2d 12, 19-20 (D. Conn. 2011) (finding that the fact that plaintiff had been employed by the defendant for many years with a good record, combined with the fact that plaintiff was passed over in favor of

substantially younger employees made alleged stray remarks regarding plaintiff's age more probative). For these reasons, the Court declines to disregard the alleged comments as mere "stray remarks." *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *modified in part on other grounds by Gross*, 557 U.S. at 180 (collecting cases); *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decisionmaking process"); *cf. Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (contrasting "the stray remarks of a colleague" with "comments made directly to" the plaintiff by someone with "enormous influence in the decision-making process").  The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.  *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (explaining that the label "stray" is inappropriate where "other indicia of discrimination" tie the remarks to an adverse employment action); *compare Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 162-63 (2d Cir. 1998) (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiff's discharge), *with Slattery*, 248 F.3d at 92 n. 2 (characterizing remarks as "stray" where they were "unrelated to [the plaintiff's] discharge"). The remarks here are attributed to persons who had decision making authority or influence and not by a mere co-worker.  In addition, they were not remotely innocuous or ambiguous comments, the intent of which could be misunderstood.  They were specific and unmistakable comments indicative of discriminatory intent, which if

24

proven could clearly overcome and render pretextual any asserted non-discriminatory reason.

The Court finds that Plaintiff has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that Plaintiff's age was a "but for" cause of Defendant's decision to sever his employment.

## B. Employee or Independent Contractor

Defendant asserts that Plaintiff is an independent contractor rather than an employee, and thus his claim is not covered by the ADEA.  Individuals who are "independent contractors" rather than "employees" may not recover under the ADEA.  *See Legeno v. Douglas Elliman, LLC*, 311 Fed. Appx. 403, 404 (2d Cir. 2009) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509 (2d Cir. 1994)).  Therefore, this Court must consider whether Plaintiff has raised a genuine issue of material fact as to whether he is an employee rather than an independent contractor.

The Court must use the common law of agency to determine whether Plaintiff is an "employee" for the purposes of the ADEA.  *See, e.g.*, *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) (applying the common law of agency to a plaintiff bringing discrimination claims under Title VII).  To determine whether a person is an employee under the common law of agency, "the Second Circuit applies a thirteen-factor test developed by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)."  *House v. Wackenhut Servs.*, No. 10-Civ. 9476, 2012 U.S. Dist. LEXIS 130879, at *23 (S.D.N.Y.

Aug. 20, 2012); *see also Bogues*, 383 F. Supp. 2d at 353-54 (applying the *Reid* factors).  The thirteen factors are: "[1] the hiring party's right to control the manner and means by which the product is accomplished . . . .; [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; [13] and the tax treatment of the hired party." *Gulino v. N.Y. State. Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006) (quoting *Reid*, 490 U.S. at 751-52).

"Although '[n]o one of these factors is determinative,'" *Gulino*, 460 F.3d at 371 (modification in original) (quoting *Reid*, 490 U.S. at 752), "the common-law element of control is the principal guidepost that should be followed," *Id.* (quoting *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003)). The "greatest emphasis should be placed on the first factor – that is, on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks." *Legeno*, 311 Fed. Appx. At 405 (quoting *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113-114 (2d Cir. 2000)).

"In balancing the *Reid* factors, a court must disregard those factors that, in light of the facts of a particular case, are (1) irrelevant or (2) of 'indeterminate'

weight--that is, those factors that are essentially in equipoise and thus do not meaningfully cut in favor of either the conclusion that the worker is an employee or the conclusion that he or she is an independent contractor."  *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) (applying the *Reid* factors to a plaintiff alleging discrimination under Title VII).  The Court will consider only the *Reid* factors that are relevant in this case.

Before considering the *Reid* factors, the Court notes that there is a dispute as to whether Plaintiff signed an agreement indicating that he was an independent contractor at the time he began his relationship with Demand Shoes. The Defendant asserts that Plaintiff signed an agreement acknowledging that he was an independent contractor, but that it has been "unable to find the physical Independent Contractor Agreement signed by Plaintiff." [Dkt. 40, Def. Mem. at 13.] The Plaintiff denies ever signing such an agreement.  [Dkt. 46, Pl. Opp. at 17.] The Defendant did produce such contracts signed by other members of its sales force.  [Dkt. 41, Def. 56(a)(1) Statement, Ex. C, att. 2].  The absence of a record of a regularly conducted business activlty, such as the execution of a contract as demonstrated here, is admissible to prove that the matter did not occur where records were normally kept of matters of this kind and neither the source of the information, in this case the Defendant, nor any other circumstances indicate a lack of trustworthiness. Fed. R. Evid. 803(7).  Thus, the fact that the Defendant was able to produce independent contractor agreements for other of its salesmen indicates the Defendant regularly maintained agreements when it did enter into them and the absence of an agreement with the Plaintiff is evidence that the

Defendant did not enter into an independent contractor agreement with the Plaintiff.

Even if Plaintiff had signed an independent contractor agreement as asserted by Defendant, such agreement would not be the final word in determining whether Plaintiff was an employee or an independent contractor, as "an employee does not become an independent contractor simply because a contract describes him as such." *Legeno*, 311 Fed. Appx. at 405 (quoting *In re Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984)).

1. Manner and Means of Control

In regards to the Defendant's right to control the manner and means of Plaintiff's work it is undisputed that Plaintiff had discretion over the hours he worked and the schedule he set; Plaintiff set his own hours and made the decisions which customers he would see at and at what times. [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 53-56.]

Further, Plaintiff worked out of a home office, and never had an office at Defendant's business offices in St. Louis, Missouri, and traveled to Defendant's St. Louis office on only two occasions during his relationship with Defendant. [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 59-61.]

It is also undisputed that Plaintiff was required by Defendant to submit weekly reports to Defendant regarding customer visits and sales. [Dkt. 41, Def. 56(a)(1) Statement, ¶ 58; Dkt. 50 at 5.] Plaintiff testified in his deposition that he was required to submit a weekly report by 8:00 am every Monday morning, and that Defendant threatened to withhold his commission check if he failed to

comply.  [Dkt. 41, Ex. A, Pl. Depo Tr. at 63:25-64:14.]  The precise format of the report was not prescribed by the Defendant, but Defendant did prescribe the content of the report. [*See*, Dkt. 41, Ex. E, ex. 2; Dkt. 41, Ex. G, ex. 2.]

Additionally, the record contains emails from Defendant criticizing the content of Plaintiff's weekly report emails and instructing him to revise the way he writes them. *Id.* Although it is undisputed that Plaintiff never received official written performance reviews from Defendant, [Dkt. 41, Def. 56(a)(1) Statement, ¶ 80.], the record contains further emails sent to Plaintiff by Defendant in which Defendant offers criticism of Plaintiff's performance of his duties and offers suggestions or instructions on what he should do better.  For example, in a June 2010 email, Joseph Butrus wrote to Plaintiff: "Let me be clear this is important enough that if you continue to be non-responsive it could cost you your job with this company."  [Dkt. 41, Def. 56(a)(1) Statement, Ex. C, ex. 1.]  Diane Butrus wrote in a December 21, 2009 email to Plaintiff: "I expect a little more motivation and creativity to get at least 15 sales calls (by phone/email/visit) every week of 2010. If you don't do that, you aren't trying and we need sales people who are going to try.  As you can tell, I am not happy about your lack of enthusiasm and lack of results."  [Dkt. 41, Def. 56(a)(1) Statement, Ex. G, ex. 2.]

It is undisputed that Plaintiff was required to attend certain trade shows. [Dkt. 41, Def. R. 56(a)(1) Statement, ¶ 9.][10]  The Court notes that by requiring

---

[10] Defendant argues that the attendance at trade shows was part of the contract with Plaintiff. [Dkt. 50 at 5.]  The Court finds Defendant's argument unconvincing. As noted above, the record contains no contract between Plaintiff and Defendant. Further, the Court notes that none of the sample Independent Sales Representative Agreements produced by Defendant, which include an agreement

Plaintiff to attend certain trade shows, including trade shows outside his regular territory, Defendant was exercising nominal control over the days Plaintiff worked and the location in which Plaintiff worked.

The evidence in the record on summary judgment also indicates that Plaintiff's duties extended beyond that of merely selling shoes, to include responding to customer service inquiries.  [*See, e.g.*, Dkt. 41, Def. 56(a)(1) Statement, Ex. C, ex. 1, Ex. E, ex. 9.]  Plaintiff testified at his deposition that he was "expected to collect money; take care of any issues that the customers had, whether it be shipments or returns, complaints; we were also instructed to handle any advertisements – or any advertising that the customer may have wanted to do."  [Dkt. 47, Ex. 22, Pl. Depo Tr. at 31:1-5.]

Plaintiff testified at his deposition that he communicated several times a day with Defendant's National Sales Manager Jack Cicione, and that Cicione would call him on the weekends as well.  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 94:13-15.]  Viewing the facts in the light most favorable to Plaintiff, this indicates close supervision by Defendant, which weighs in favor of finding that Plaintiff was an employee.  Additionally, Plaintiff testified in his deposition that he took a vacation, with notice to Defendant that he was on vacation, and that Defendant called him repeatedly about customer matters during that vacation.  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 51:4-11.]

Additionally, the record contains further evidence of control where it indicates that Defendant required Plaintiff to submit a doctor's note indicating

---

signed by Plaintiff's successor, contain any mention of attendance of at trade shows.  [*See* Dkt. 41, Ex. C, ex. 2.]

that he was healthy enough to work before Plaintiff could return to work after having surgery in the summer of 2010.  [Dkt. 47, Exs. 9, 10]  Additionally, Defendant apparently accelerated certain of Plaintiff's commission payments that were due so that they were paid during the time he was unable to work.  [Dkt. 47, Exs. 9, 10.]  Although Defendant asserts that it was motivated by a "moral obligation" to make certain that Plaintiff was fit for work, [Dkt. 50 at 6], the fact that Plaintiff was required to submit a doctor's note before returning to work, and Defendant's acceleration of payments to cover the time Plaintiff was unable to work, weighs in favor of finding that plaintiff was an employee rather than an independent contractor.

Finally, Plaintiff testified at his deposition that after he was hired by Defendant he was told by Jack Cicione that he had to work exclusively for Defendant, that he could not sell shoes for any other company.  [Dkt. 46, Ex. 22, Pl. Depo. Tr. at 128:24-131:11.]  Defendant asserts it did not prohibit its sales staff from selling shoes for other companies while they sold for Demand Shoes.  [Dkt. 40 at 13.]

Viewing the facts in the light most favorable to Plaintiff, the Court finds that there is sufficient evidence of control over Plaintiff's work in the record to find that this factor weighs in favor of finding that Plaintiff was an employee. However, there are enough facts in dispute regarding the extent of Defendant's supervision and control that the Court is unwilling to give much weight to this factor for the purpose of this summary judgment ruling.

## 2. Source of the Instrumentalities and Tools

It is undisputed that Plaintiff used his own office supplies and equipment, purchased and used seven of his own bags to carry shoe samples to show his customers, drove his own vehicle to meet customers, maintained his own auto insurance at his own expense, that Defendant did not reimburse Plaintiff for meals, that Plaintiff was required to bear all expenses for attending four major trade shows per year, and that Defendant was not required to wear a uniform. [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 62-64, 66-67, 69, 73-74, 77.]

However, it is also undisputed that Defendant reimbursed Plaintiff for some of his costs, including a portion of Defendant's phone, fax and/or email expenses, a portion of his mileage costs for driving, and travel expenses for some but not all trade shows. [Dkt. 40, Def. Mem. at 10; Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 75-76.] Defendant reimbursed Plaintiff between $600 and $800 a month for mileage expenses, which would appear to have covered between one-fourth and one-third of Plaintiff's annual mileage expenses, approximately. [Dkt. 41, Def. 56(a)(1) Statement, ¶ 75.] Additionally, Defendant supplied the sample shoes Plaintiff used when meeting with customers at Defendant's own cost, [Dkt. 47, Pl. 56(a)(2) Statement, ¶¶ 62-64, 66, 73.] The fact that Defendant reimbursed Plaintiff for a not insignificant portion of his expenses and provided him with certain tools of his trade weighs in favor of finding that Plaintiff was an employee rather than an independent contractor.

3. Duration of the Relationship

There is no evidence in the record indicating that the parties contemplated anything other than a relationship with an indefinite length of time. Drawing all

inferences in favor of the Plaintiff, the Court finds that this weighs in favor of finding that Plaintiff was an employee rather than an independent contractor.  *Cf. JustMed, Inc. v. Byce*, 600 F.3d 1118, 1126 (9th Cir. 2010) ("[T]he fact that the parties contemplated a relationship of indefinite duration cuts in favor of finding [defendant] to be an employee.")

## 4. Method of Payment

Although Defendant asserts in its brief and in its 56(a)(1) statement that it is undisputed that Plaintiff was paid by a sales commission, calculated as a percentage of his total sales, [Dkt. 41, Def. 56(a)(1) Statement, ¶ 71], and Plaintiff admits that fact, [Dkt. 47, Pl. 56(a)(2) Statement, ¶ 71], the documents in the record on summary judgment contradict this fact.  It appears from the documents in the record that describe Plaintiff's compensation scheme that Plaintiff was in fact paid $6000 per month, regardless of his sales, and received a 1% commission on top of that. [Dkt. 50, Ex. I, ex. 2.] Additionally, Schedule C to Plaintiff's federal income tax return for 2009 indicates that he received gross receipts or sales of approximately $91,000.[11]  [Dkt. 41, Ex. G, ex. 5 at RT 0294.] According to a chart attached to Defendant's CHRO RFI Response, which provides sales comparison figures for several of Defendant's sales representatives, Plaintiff had sales of approximately $719,000 in 2009.  [Dkt. 47,

---

[11] Nowhere in Plaintiff's federal income tax return does it list the source of the claimed income; viewing the facts in the light most favorable to Plaintiff, the Court will assume for the purpose of this summary judgment that Plaintiff worked exclusively for Defendant during that period, as Plaintiff asserts he was required to work exclusively for Defendant.  [Dkt. 46, Pl. Opp. at 5.]

Ex. 1A, ex. B.]  One percent of $719,000 is $7,190, far less than the $91,000 reported on Plaintiff's 2009 federal income tax return.

Additionally, in a December 21, 2009 email from Diane Butrus to Plaintiff, Diane Butrus wrote: "Your sales for 2009 are not enough to cover your monthly payment . . ."  [Dkt. 41, Def. 56(a)(1) Statement, Ex. G, ex. 2.]  This email suggests that Plaintiff was receiving a minimum monthly payment that he would receive regardless of what his sales were, resembling a salary.  This is further supported by the compensation plan documents that Defendant prepared for Plaintiff for each year from 2008 through 2010, which show that Plaintiff was to receive a monthly payment of $6,000 plus commissions based on sales.  [Dkt. 50, Ex. I, ex. 2.][12]  Further, Defendant's CHRO RFI Response states that Plaintiff's "base compensation for services was $6,000 monthly, plus commissions."  [Dkt. 47, Ex. 1A, ¶ 13.]

If Plaintiff were paid purely by commission on his sales, which the parties themselves agree was the case here, that would weigh in favor of finding him to be an independent contractor rather than an employee.  *Cf. Schwieger v. Farm Bureau Ins. Co.*, 207 F.3d 480, 486 (8th Cir. 2000) (finding that the "method of payment" factor weighs in favor of finding that plaintiff is an independent contractor when plaintiff was strictly on commission); *Cosgriff v. Valdese Weavers LLC*, No. 09 cv 5234, 2012 U.S. Dist. LEXIS 46245, at *27-28 (S.D.N.Y. Mar.

---

[12] **Plaintiff also attached a copy of one year's Compensation Plan, for the year 2010, as Exhibit 15 to his 56(a)(2) statement.  Plaintiff cited to this exhibit to support his claim that he was an employee, rather than an independent contractor, because he was reimbursed for some expenses.  [Dkt. 47, Pl. 56(a)(2) Statement, ¶ A.73.]  The compensation plan describes the types of expense reimbursement that Plaintiff is eligible to receive.**

30, 2012) (finding that the fact that plaintiff was paid only on the basis of commissions to support the conclusion that plaintiff was an independent contractor).  However, it appears from the Court's review of the record that the vast majority of Plaintiff's compensation appears to have been a more salary-like fixed monthly payment, and thus the Court declines to give this factor much weight.  *Cf. Leach v. Kaykov*, No. 07-cv-4060, 2011 U.S. Dist. LEXIS 34235, at *65 (E.D.N.Y. Mar. 30, 2011) ("receipt of a salary or hourly-wage creates a strong economic reliance on the employer and reduces the employee's autonomy") (citation omitted).

## 5. Provision of Employee Benefits and Tax Treatment of the Hired Party

It is undisputed that Defendant did not provide any sort of health or other insurance benefits for Plaintiff.  [Dkt. 41, Def. 56(a)(1) Statement, ¶ 78.]  It is also undisputed that Plaintiff received an Internal Revenue Service ("IRS") 1099 Form for each year in which he received compensation from Defendant, and that Defendant never withheld any taxes, social security, or other deductions from Plaintiff's compensation.  [Dkt. 41, Def. 56(a)(1) Statement, ¶ 82.]  It is undisputed that Plaintiff claimed a "self-employment" tax and "self-employed" health insurance deductions on his 2008, 2009, and 2010 federal income tax returns, the years for which he had income from Defendant, and that Plaintiff deducted various business expenses from his 2009 and 2010 federal income tax returns, including expenses for travel, meals, office expenses, vehicle mileage, etc.  [Dkt. 41, Def. 56(a)(1) Statement, ¶¶ 83-85.]  The fact that Defendant did not provide any employee benefits, that Plaintiff claimed self-employment taxes, and that

Defendant did not withhold any federal, state, social security, or any other taxes, weighs in favor of finding that Plaintiff was an independent contractor rather than an employee. *Cf. Dutson v. Farmers Ins. Exch.*, No. 93-35205, 1994 U.S. App. LEXIS 25564, at *11 (9th Cir. Sept. 9, 1994). However, an employee's tax treatment is not dispositive under the common law agency test. *Cf. McLellan v. E.I. Dupont de Nemours & Co., Inc.*, 04-cv-314A, 2006 U.S. Dist. LEXIS 94233, at *34 (W.D.N.Y. Sept. 22, 2006) (applying the common law agency test in the ERISA context and finding: "Nor does the fact that an individual is, for income tax purposes, considered to be self-employed in his own business dispositive under the common law agency test.") (citing *Sharkey v. Ultramar Energy, Ltd.*, 70 F.3d 223, 232 (2d Cir. 1995)).

## 6. Question of Law or Fact - Who Decides

The Second Circuit has thus far expressly declined to answer the question "whether the employee/independent contractor finding should ultimately be made by a jury or by the court." *Salamon*, 514 F.3d at 232 n.17 (citations omitted). Instead, the Second Circuit opined that the issue "should be considered by the district court in the first instance." *Id.* In *Salamon,* the Second Circuit vacated the district court's grant of summary judgment to defendant, and remanded for reconsideration. Upon remand, the Western District of New York decided in *Salamon* that "in light of the dispute over the existence and degree of the *Reid* factors as they apply to Plaintiff's case, Plaintiff's employment status can only be resolved upon trial of the disputed material facts." *Salamon v. Our Lady of Victory Hosp.*, 867 F. Supp. 2d 344, 358 (W.D.N.Y. 2012).

36

Similarly, because there is dispute over the existence and degree of the *Reid* factors in this case, this Court finds that the question of whether Plaintiff is an employee or an independent contractor is a genuinely disputed issue of fact which can only be decided at trial. *See, id.*; *see also Kirsch*, 148 F.3d at 171 (declining to find that the submission to the jury of the question of whether plaintiff was an employee or an independent contractor warrants a new trial); *cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (finding that the question of whether a defendant is an "employer" is an element of plaintiff's claim rather than a jurisdictional issue and finding "[i]f satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.") (citation omitted); *Murphy v. Guilford Mills, Inc.*, No. 02 Civ.10105, 2005 U.S. Dist. LEXIS 7160, at *13 (S.D.N.Y. Apr. 22, 2005) (granting summary judgment on plaintiffs' negligence claims and finding that "the question of independent contractor status is often a question of fact", but that a court may decide the issue as a matter of law "where the evidence in the record is undisputed") (citations omitted).  Plaintiff must prove at trial that he was an employee rather than an independent contractor in order to recover under the ADEA.

## C. "Employer"

Defendant has moved for summary judgment on the grounds that it is not an "employer" within the meaning of the ADEA.  The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  The statute includes in the definition of "employer" the requirement that such entity have "twenty or more employees for each

working day in each of twenty or more calendar weeks in the current or preceding calendar year."  29 U.S.C. § 630(b).  The term "current year" is interpreted to mean the year in which the discriminatory act took place.  *See Feliciano v. 131 St. Block Ass'n, Inc.*, No. 09 Civ. 2474, 2011 U.S. Dist. LEXIS 4355, at *6 (S.D.N.Y. Jan. 13, 2011)(citation omitted), *aff'd*, 468 Fed. Appx. 41 (2d Cir. 2012).  Here the Plaintiff was terminated in 2010, meaning Plaintiff must establish that Demand Shoes had twenty employees for each working day in each of twenty or more calendar weeks in 2010 or 2009.

This is a threshold issue, and Plaintiff may not recover under the ADEA unless he can establish that Defendant is an "employer" as defined by that statute.  *See, e.g.*, *Feliciano*, 2011 U.S. Dist. LEXIS 4355, at *6 (dismissing plaintiff's ADEA and Title VII claims for failure to establish that defendant had sufficient employees to meet the respective statutory definitions of "employer") (citing *Arbaugh*, 546 U.S. at 516); *see also Pastor v. P'ship for Children's Rights*, No. 10-cv-5167, 2012 U.S. Dist. LEXIS 140917, at *11-12 (E.D.N.Y. Sept. 27, 2012) (granting summary judgment for defendant where plaintiff failed to show that defendant had sufficient employees to meet the definitions of "employer" under either Title VII or the ADA); *cf. Arbaugh*, 546 U.S. at 513 (finding that satisfaction of the definition of the term "employer" is a prerequisite to the application of Title VII); *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 205 (1997) (holding that the defendant could be subject to Title VII only if it met the statutory definition of "employer" at the time of the alleged wrong).

Demand Shoes asserts that it has *no* employees, arguing that everyone working with it is an independent contractor.  [Dkt. 41, Def. 56(a)(1) Statement, ¶ 8.]  Even if the Court were to assume that Demand Shoes's other sales people were employees rather than independent contractors, Plaintiff does not dispute that Demand Shoes itself does not employ enough people to expose it to liability under the ADEA's anti-discrimination provision.[13]  Thus, Plaintiff may only recover under the ADEA by demonstrating that Demand Shoes together with another company is a "single employer",[14] and that by aggregating the number of employees held by the two companies the statutory threshold requirement is satisfied.

## 1. Single Employer Doctrine

The single employer doctrine allows the employees of two separate companies to be aggregated for the purposes of satisfying the ADEA's statutory threshold.  *See Arculeo v. On-Site Sales & Mktg. LLC*, 425 F.3d 193, 198 (2d Cir.

---

[13] Demand Shoes asserts that between 2007 and 2011 it never engaged more than seven people.  [Dkt. 41, Def. 56(a)(1) Statement, ¶ 11.]  Plaintiff does not admit or dispute this fact, and cites no evidence to no admissible evidence in the record to contradict it, as required by Local Rule 56(a)(3), nor does the Court find contradictory evidence in the record, and thus the Court will take as controlling Defendant's assertion that it never engaged more than seven people between 2007 and 2011 as controlling.  The Court does not decide here whether those people were employees or independent contractors.

[14] The Court does not consider the "joint employer" theory here, as Plaintiff appears to assert only the "single employer" theory.  Under the joint employer theory, "only the employees who are jointly employed can be aggregated for Title VII purposes."  *Ingenito v. Riri USA, Inc.*, No. 11-cv-2569, 2013 U.S. Dist. LEXIS 27333, at *14-15 (S.D.N.Y. Feb. 27, 2013) (citing *Dias v. Cmty. Action Project, Inc.*, No. 07-CV-5163, 2009 U.S. Dist. LEXIS 17562, at *9 (E.D.N.Y. Mar. 6, 2009)).  Additionally, without detailed information on the employees of Diba Imports, the Court lacks sufficient information to determine whether any of Diba Imports' employees are jointly employed with Demand Shoes.

2005) (considering the single employer doctrine in regards to a Title VII claim).  "A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise . . ."  *Ingenito*, 2013 U.S. Dist. LEXIS 27333, at *14-15 (quoting *Arculeo*, 425 F.3d at 198).  The factors for determining whether the single employer doctrine should apply include: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Ingenito*, 2013 U.S. Dist. LEXIS 27333, at *16 (quoting *Gulino*, 460 F.3d at 378).  "The critical question in single entity analysis is: 'what entity made the final decision regarding employment matters related to the person claiming discrimination?'"  *Ingenito*, 2013 U.S. Dist. LEXIS 27333, at *16 (quoting *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007)).

As noted above, there is no dispute that both Diane and Joseph Butrus directed the Plaintiff in the performance of his duties, although there is some dispute over who made the final decision to terminate Plaintiff's employment, with Defendant asserting it was made by Diane Butrus, Joseph Butrus, and John Cicione, and Plaintiff appearing to argue that the decision was made by Diane Butrus.  However, the record contains no undisputed evidence showing that these individuals held managerial positions at Diba Imports.  Plaintiff asserts in his briefing that Joseph Butrus has a controlling ownership interest in Diba Imports.  [Dkt. 46 at 14.]  Additionally, in its CHRO RFI Response, the Defendant states that Diane Butrus is the "Managing Member" and the "Chief Operating Officer" of Demand Shoes, LLC and that Joseph Butrus is the "President" of

Demand Shoes.  [Dkt. 47, Ex. 1A, ¶¶ 11(c), (d).]  Despite these admissions at the administrative stage of this dispute, Defendant now contends that Joseph Butrus is "not a direct owner of Demand Shoes or Diba Imports," and denies that Joseph Butrus is president of Demand Shoes.    [Dkt. 50 at 8; Dkt. 56 at 1.]  In regards to Diane Butrus, Plaintiff asserts that she is a partner in Diba Imports. [Dkt. 46 at 3.] Defendant contends, supported by an affidavit from Diane Butrus, that she is not a partner of Diba Imports. [Dkt. 50 at 7, Ex. I at ¶8.]  Additionally, Diane Butrus's email signature block reads: "C O O[,] Diba Imports, LP/Demand Shoes, LLC." [Dkt. 47, Ex. 4.]  There is nothing in the record indicating that John Cicione has any position at or ownership interest in Diba Imports.  Plaintiff has raised a genuine issue of fact regarding whether or not Diane Butrus and Joseph Butrus hold senior roles at Diba Imports, and thus whether Diba Imports was involved in the final employment decision related to Plaintiff.

        In addition to the evidence regarding which entity made the final employment decision related to Plaintiff, the record before the Court contains other evidence suggesting that there is interrelation of operations, centralized control of labor relations, and common management between Demand Shoes and Diba Imports.  In its "Respondent's Answer to Affidavit of Illegal Discriminatory Practice",[15] submitted to the CHRO apparently in response to Plaintiff's submission to the CHRO, the Defendant describes Diba Imports as the "paymaster for Demand Shoes."  [Dkt. 47, Ex. 1, ¶ 5.]  Although the word is not defined or explained by either party in their briefing, Merriam-Webster defines

---

[15] The Court will refer to this document as the "CHRO Answer."

"paymaster" as "an officer or agent whose duty it is to pay salaries or wages."

*Paymaster Definition*, Merriam-Webster, http://www.merriam-

webster.com/dictionary/paymaster (last visited Aug. 26, 2013.  If Diba Imports is

in fact responsible for paying the salaries and wages of those employed by

Demand Shoes, that would weigh in favor of aggregating their employees under

the single employer doctrine.  To the extent that Defendants assert that the role of

a paymaster is purely ministerial, that characterization is refuted by the control

which Diane and Joseph Butrus exerted over Plaintiff's performance of his duties

at Diba Imports.

There is additional evidence of the joint operation of Diba Imports and

Demand Shoes.  In both CHRO submissions found in the record, The CHRO

Answer and the CHRO RFI Response, Defendant describes Demand Shoes as

"affiliated with Diba Imports, LP" and "an affiliated company of its Paymaster

Diba Imports, LP."  [Dkt. 47, Ex. 1 at 1, Ex. 1A at 1.]  Although neither party

explains what "affiliate" means in this case, Defendant states cryptically that

"four entities own Demand Shoes, and four entities own Diba Imports, with only

one of those four entities overlapping."  [Dkt. 50 at 8.]  The Court notes that

Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to

another corporation by shareholdings or other means of control; a subsidiary,

parent or sibling corporation."  *Black's Law Dictionary* 67 (9th ed. 2009).  If this

definition is accurate as to the relationship between Demand Shoes and Diba

Imports, that would further weigh in favor of applying the single employer

doctrine here.

Additionally, Defendant attached to its CHRO RFI Response an excerpt from an employee handbook that includes what appears to be the cover page of the handbook, on which is printed "Diba Imports, LP & Demand Shoes, LLC", suggesting that it is the handbook for both Diba Imports and Demand Shoes. [Dkt. 47, Ex. 1A, ex. D.]  The record also contains email signature blocks, including one for Diane Butrus, that indicate that the sender of the email works for "Diba Imports, LP/Demand Shoes, LLC."  [Dkt. 41, Def. 56(a)(1) Statement, Ex. E, ex. 9; Dkt. 41, Def. 56(a)(1) Statement, Ex. G, ex. 3; Dkt. 47, Pl. 56(a)(2) Statement, Exs. 4, 6.]

Finally, Defendant submitted to the CHRO, as evidence to support their claim that the majority of their employees were males over the age of 40, a chart providing demographic information for its workers.  [Dkt. 47, Pl. 56(a)(2) Statement, Ex. 1A, ex. c.]  Of note is the fact that this chart provides demographic information for three entities: Demand Shoes, Diba Imports, and an entity named "Diba Far East."  *Id.*  Although the Court lacks sufficient explanation of the chart to draw a definitive conclusion from it, the Court notes that it appears Defendant was willing to aggregate its workers with those of Diba Imports and Diba Far East as part of its defense to the claims Plaintiff made with the CHRO.

While it is a very close call, the Court finds that there is a genuine issue of material fact regarding the question of whether or not Demand Shoes is a single employer with Diba Imports, such that the employees of both companies should be aggregated for the purposes of satisfying the statutory definition of "employer."  This is an issue that must be decided by the jury at trial.

The Court also finds that there is a genuine issue of material fact regarding whether or not Diba Imports had twenty or more employees for the requisite time period.  Defendant admitted in the CHRO Answer, dated May 20, 2011, that "Diba Imports employs in excess of twenty employees but Complainant was never employed by Diba Imports."  [Dkt. 46, Ex. 1 at 1.]  This submission was signed by Defendant's attorney, and accompanied by a signed and notarized statement by Diane Butrus attesting to the truth of the information contained in the submission.  [Dkt. 46, Ex. 1 at 9.] Defendant did not specify in this CHRO submission whether Diba Imports had twenty employees for each working day in each of twenty or more calendar weeks in 2010 or 2009, as required by the statute.  Neither party included in the record the document that this submission appears to answer, Plaintiff's affidavit of illegal discriminatory practice, so the Court is unable to see the full context in which Defendant admitted that Diba Imports has twenty employees.  Even without knowing the full context of the submission, it is clear that Defendant admitted to the CHRO, whose duties include "[compiling] facts concerning discrimination in employment, . . ." Conn. Gen. Stat. § 46a-56(a)(1), that Diba Imports has twenty employees.  Nor does Defendant deny in its pleadings in this Court that Diba Imports had twenty employees during the relevant time period.  As noted above, on summary judgment, the moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010).

As noted above, Defendant attached to its CHRO RFI Response what appears to be a chart presenting age and gender information for the years 2007-

2010 for "contractors engaged by Demand Shoes and its affiliated companies." [Dkt. 46, Ex. 1A, at 4, Ex. C.]  However, this chart is of no use in determining whether Diba Imports had enough employees to satisfy the statutory definition of employer, as there is very little explanation offered for the chart, and it is not clear from the chart whether each entity identified on the chart employs additional people not listed on the chart.  Nor does the chart specify the number of days or weeks each individual was employed.

While it is not unreasonable to infer that the CHRO considered this issue and concluded that Diba Imports and Demand Shoes were joint employers, the Court finds that there remains a genuine issue of material fact as to whether Diba Imports had sufficient employees during the relevant time period to satisfy the statutory definition of employer.  This issue must also be decided by the jury at trial.

## D. CFEPA CLAIMS

CFEPA directs that "[i]t shall be a discriminatory practice in violation of this section[] [f]or an employer . . . to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age, sex . . . ." Conn. Gen. Stat. § 46a-60(a)(1) (2013).

CFEPA claims for age discrimination have traditionally proceeded under the same analysis as ADEA claims. *See, e.g., Nurse v. Windham Cmty. Mem'l Hosp.*, No. 3:10-cv-00177, 2012 U.S. Dist. LEXIS 182471, at *47 n.10 (D. Conn. Dec.

28, 2012) ("Connecticut courts have repeatedly held that Connecticut's antidiscrimination statutes, including the CFEPA, should be interpreted in accordance with federal antidiscrimination laws.") (quotation and citations omitted); *see also Levy v. Commission on Human Rights & Opportunities*, 671 A.2d 349, 355 (Conn. 1996) (noting that Connecticut courts "review federal precedent concerning employment discrimination for guidance in enforcing [its] own antidiscrimination statutes.") (citation omitted). However, it is unclear whether age discrimination claims under CFEPA should still proceed under the same standard as the ADEA in light of the Supreme Court's recent decision in *Gross* altering the standard, imposing a "but for" rather than a "motivating factor" test to ADEA claims. Although the Second Circuit has recently applied the "but-for" standard to CFEPA claims, *see Rubinow v. Boehringer Ingelheim Pharms., Inc.*, 496 Fed. Appx. 117, 118 (2d Cir. 2012); *Timbie v. Eli Lilly & Co.,* 429 Fed. Appx. 20, 22 n. 1 (2d Cir.2011), neither the Connecticut Supreme Court nor the Appellate Court have had occasion to rule on the issue, and there is a split of authority at the Connecticut trial court level on this issue. *Compare Dwyer v. Waterfront Enters.*, CV126032894S, 2013 Conn. Super. LEXIS 1174, at *26-27 (Conn. Super. Ct. May 24, 2013) (declining to apply the holding in *Gross*, and determining that under CFEPA, a plaintiff is only required to prove that age discrimination was a contributing or motivating factor, rather than a "but-for" reason for the adverse employment action); *and Wagner v. Bd. of Tr. for Connecticut State Univ.* No. HHDCV085023775S, 2012 Conn. Super. LEXIS 316, at *38 (Conn. Super. Ct. Jan. 30, 2012); *with Marasco v. Conn. Reg'l Vocational-*

*Technical Sch.*, CV095014324, 2012 Conn. Super. LEXIS 2572, at *15-18 (Conn. Super. Ct. Oct. 15, 2012) (applying the holding in *Gross* to plaintiff's CFEPA claim).

In addition, this Court has previously held that until Connecticut courts adopt a new standard, it will follow existing Connecticut Supreme Court pronouncements on the appropriate standard to employ in applying Connecticut law and apply a contributing or motivating factor analysis to CFEPA claims. *See Herbert v. Nat'l Amusements, Inc.*, 833 F. Supp. 2d 192, 202-03 (D. Conn. 2011); *see also Weber v. FujiFilm Medical Sys. U.S.A., Inc.*, 854 F. Supp. 2d 219, 231 n.7 (D. Conn. 2012). Therefore under CFEPA, once the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must only come forward with evidence that age discrimination was a contributing or motivating factor in his termination and does not have to demonstrate that his age was the "but-for" cause of the adverse action.  Because Plaintiff has offered evidence sufficient for a jury to find that his age was a "but for" cause of his termination, a higher burden than that required by CFEPA, Plaintiff has also offered sufficient evidence for his CFEPA age discrimination claim.

Claims for gender discrimination under CFEPA are also analyzed under the *McDonnell Douglas* framework.  *See, e.g., Adams v. Yale-New Haven Hosp.*, No. 3:06-cv-1166, 2012 U.S. Dist. LEXIS 136933, at *14 (D. Conn. Sept. 25, 2012) (analyzing plaintiff's CFEPA gender discrimination "in the same manner as the Title VII claim because the 'Connecticut Supreme court looks to federal precedent

47

when interpreting and enforcing the CFEPA'") (quoting *Williams v. Quebecor World Infiniti Graphics*, 456 F. Supp. 2d 372, 383 (D. Conn. 2006)); *Jabren v. Civil Johnson Controls, Inc.*, No. 3:02-cv-100, 2004 U.S. Dist. LEXIS 27431, at *12 (D. Conn. Mar. 31, 2004).  The burden for establishing a *prima facie* case of gender discrimination in employment is "minimal."  *Jabren*, 2004 U.S. Dist. LEXIS 27431, at *14 (citing *Carlton*, 202 F.2d at 134).  Unlike the standard for ADEA age discrimination claims, Plaintiff need not prove that his gender was a "but for" cause of Defendant's decision to terminate him; Plaintiff must show only "circumstances that would be sufficient to permit a rational finder of fact to infer that defendant's employment decision was more likely than not based in whole or in part on discrimination."  *Adams*, 2012 U.S. Dist. LEXIS 136933, at *16 (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997))(additional citation omitted).

Because the alleged statements about age and gender were made simultaneously,[16] the Court will apply the same analysis to both.  For the same reasons listed above in Section III.A, the Court finds that Plaintiff has established a *prima facie* case of gender discrimination.  Additionally, because Plaintiff has satisfied the higher standard of proof required for an ADEA claim of age

---

[16] The only difference between the facts supporting the CFEPA age and gender claims is the Plaintiff's testimony about the phone call from John Cicione in which Cicione informed Plaintiff that he was being severed.  Plaintiff's deposition testimony indicates that Cicione mentioned only Plaintiff's age in this call.  [Dkt. 41, Ex. A, Pl. Depo. Tr. at 65:2-4.]  However, the Court finds that Plaintiff's testimony regarding several other alleged comments attributed to Joseph Butrus in which age and gender are both specifically mentioned to be sufficient for a reasonable jury to find that Plaintiff's gender was a "but for" cause of his termination.

discrimination, the Court finds that Plaintiff has presented sufficient evidence upon which a reasonable jury could find that Defendant's decision to terminate Plaintiff was more likely than not based in whole or in part on gender discrimination.

Plaintiff cannot recover under CFEPA if he is an "independent contractor", rather than an "employee".  *See, e.g.*, *DeSouza v. EGL Eagle Global Logistics, LP*, 596 F. Supp. 2d 456, 467 (D. Conn. 2009) (granting summary judgment on plaintiff's Title VII and CFEPA discrimination claims where plaintiff was an independent contractor rather than an employee).  Just as with his ADEA claim, Plaintiff must prove at trial that he was an employee, rather than an independent contractor in order to recover under either of his CFEPA claims.

Additionally, Plaintiff will have to establish that Defendant employed enough people to satisfy CFEPA's definition of "employer."  CFEPA defines "employer" as "any person or employer with three or more persons in such person's or employer's employ."  Conn. Gen. Stat. § 46a-51(10).  Demand Shoes claims that it has *no* employees, that all of the people with which it works are independent contractors.  Other than for himself, Plaintiff has failed to introduce evidence to support his claim that Demand Shoes' other sales people are employees rather than independent contractors.  Plaintiff can satisfy the CFEPA definition of employer at trial either by establishing that the employees of Diba Imports and Demand Shoes should be aggregated under the single employer doctrine, and that the aggregate number of employees is greater than three, or by establishing that, in addition to himself, at least two other people working with

Demand Shoes were employees rather than independent contractors.  These issues must be decided by the jury at trial.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED as to all claims.  The Court will enter an amended Scheduling Order that will set the deadline for the submission of the parties' Joint Trial Memorandum and the date of the Jury Selection.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 30, 2013